**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIE TYRONE TROTTIE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | H-09-CV-435 |
| | § | |
| RICK THALER, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

PETITIONER WILLIE TYRONE TROTTIE'S
CROSS-MOTION FOR SUMMARY JUDGMENT,
OPPOSITION TO THE STATE'S MOTION FOR SUMMARY JUDGMENT,
AND REQUEST FOR A STAY

Zoe Dolan
Southern District of Texas 4598066
30 Vesey Street – Suite 100
New York, New York 10007
T: (347) 301-5180
zdolan@gmail.com

David Adler
Southern District of Texas 17942
Sue Jana
Southern District of Texas 748503
6750 West Loop South – Suite 120
Bellaire, Texas 77401
T: (713) 666-7576
F: (713) 665-7070

*Counsel for Petitioner*
Willie Tyrone Trottie

TABLE OF CONTENTS

Introduction………………………………………………………………………...…1

Part One: Cross-Motion For Summary Judgment

    I.        Undisputed Facts And Legal Principles

        A. There Is No Dispute That Operative Factual Allegations And
           Arguments Were Before The State Court On Habeas Review………………..2

        B. There Are Undisputed Operative Facts………………………………………..3

        C. There Is No Dispute That The State Court's Decision Applied The
           Incorrect Legal Standard; *De Novo* Review Is Appropriate……..…………...5

    II.    Analysis: The Undisputed Facts Entitle Trottie To A Judgment
        As A Matter Of Law………………………………………………………..6

    III.  Conclusion…………………………………………………………..…8

Part Two: Opposition To The State's Motion For Summary Judgment

    I.        Relief Is Appropriate Under *Strickland*.

        A. Trial Counsel Performed Deficiently…………………………………….…8

        B. Trial Counsels' Deficient Performance Prejudiced The Outcome…………...11

    II.    Exhaustion – Legal Standards…………………………………………..12

    III.  Trottie Exhausted His Ineffective Assistance Claim………………………...13

    IV.  Additional Evidence In Support Of Trottie's Ineffective Assistance
        Claim Is Cognizable.

        A. The New Affidavits Properly Reinforce Trottie's Factual Allegations
           In State Court And Establish Trial Counsel's Ineffective Assistance……….15

        B. A Hearing Is Appropriate……………………………………………………16

    V.    A Stay Pending The Completion Of Exhaustion As To Trottie's
        Ineffective Assistance And *Brady* Claims Is Required

        A. Introduction And Legal Standard……………………………………………18

i

B.   Previously Unavailable Evidence……………………………………………19

C.   *Brady* – Clark's Statement…………………………………………………..19

D.   Ineffective Assistance – The Internal Memo And Sutton's *Post-Hoc* Note…22

E.   Neither Argument Is Procedurally Defaulted; A Stay Is Appropriate……….22

VI.   The Prosecutor's Improper Questioning Warrants Relief…………………...22

Conclusion……………………………………………………………………………..23

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIE TYRONE TROTTIE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | H-09-CV-435 |
| | § | |
| RICK THALER, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

*TO THE HONORABLE NANCY ATLAS:*

Introduction

Petitioner Willie Tyrone Trottie provides the court with this (1) cross-motion for

summary judgment; (2) opposition to the State's motion for summary judgment; and (3)

request for a stay pending exhaustion of certain claims.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate when there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Rule 56 generally "applies with equal force in

the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.

2000).  As on any Rule 56 motion, resolution is "guided by the substantive evidentiary

standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).  Accordingly, any standards set forth in the Anti-Terrorism and Effective Death

Penalty Act ("AEDPA") apply only insofar as the statute is applicable.

1

The relief Trottie seeks should be granted and the State's motion should be denied, for the reasons that follow.

PART ONE:
CROSS-MOTION FOR SUMMARY JUDGMENT

I.     Undisputed Facts And Legal Principles
       A. There Is No Dispute That Operative Factual Allegations And Arguments Were Before The State Habeas Court.

The record establishes that Trottie's ineffective assistance claim was before the state court, contrary to the State's argument that it is barred as unexhausted and procedurally defaulted.  As further described below, the State ignores averments in the affidavit Trottie submitted during the state habeas proceedings, in response to an affidavit from trial counsel Connie Williams.  The Williams affidavit was apparently not filed or provided to Trottie for more than a decade after Trottie filed a complete state habeas application.  The State also ignores proposed findings of fact and conclusions of law that Trottie submitted to the state habeas court.

Trottie's ineffective assistance claim was broader than the simple failure to present evidence of self-defense that the State makes it out to be.  In state court, Trottie argued that trial counsel failed to "negate the State's theory of 'multiple murder'" and present a defense during the guilt/innocence phase.  Trottie's State Habeas Petition ("St. Habeas") at 8; Trottie's Proposed Findings Of Fact And Conclusions Of Law ("Trottie's Proposed Findings And Conclusions") at 21-22, 29.  Specifically, Trottie argued, trial counsel failed to call witnesses in light of voluntary manslaughter issues as to Barbara Canada and her brother Titus Canada.  Proposed F&C at 21-22, 29.  Based on these deficiencies, Trottie submitted:

> [T]here is a reasonable probability sufficient to undermine confidence in the outcome that the jury would have decided that Trottie's mental state at the time of the shooting was less than that required to sustain a capital murder conviction beyond a reasonable doubt.

*Id.* at 30.

In support of his arguments, Trottie submitted an affidavit listing uncalled witnesses who would have testified that he and Barbara were in an ongoing romantic relationship, up until days prior to Barbara's death, and their relationship affected him. Petition Exhibit 30 at 5. Also submitted was an affidavit from Trottie's father, Willie Sr., stating that he had relevant information regarding Trottie's relationship with Barbara and Trottie's resulting emotional and mental state. *See* Trottie's Second Amended Petition ("Amended Petition"), docket #33, Exhibit 36 at 1. Trottie argued for a finding of ineffective assistance based on Willie Sr.'s unelicited testimony. Trottie's Proposed Findings And Conclusions at 10-11.

The State ignores the foregoing and argues that Trottie's claim is unexhausted. However, there is no dispute that allegations of fact supporting each aspect of Trottie's ineffective assistance claim are contained in Trottie's affidavit and the state habeas record. Nor is there any dispute that Trottie's proposed findings of fact and conclusions of law incorporated these facts.

B.  There Are Undisputed Operative Facts.

A number of operative facts are undisputed. For example, due to trial counsel Connie Williams's failure to represent Trottie in connection with the sanity/competency evaluations, as the State observes, "neither the State's case nor Trottie's defense were mysteries." *Id.* at 33. There is also no dispute that Williams failed to advise Trottie in

connection with the evaluations to begin with.  The disclosure of Trottie's defense at the evaluations is precisely the harm that prejudiced the outcome.

With respect to Williams' ineffectiveness for failing to call witnesses to rebut planning and premeditation, there is no dispute that Trottie's affidavit listed uncalled witnesses and described testimony regarding his ongoing romantic relationship with Barbara.  Nor is there any dispute that trial counsel failed to elicit the romantic nature of Barbara's involvement with Trottie up to the time of her death.

Regarding the penalty phase, the State argues both that Trottie limited the scope of the preparatory psychiatric examination conducted by the defense psychiatrist and that the psychiatrist's report was thorough.  *Id.* 48-49, 55. Either way, there is no dispute that the report indicated Trottie was whipped as a child, and testimony regarding this abuse never emerged at trial.  There is also no dispute that the report put trial counsel on notice of this mitigating evidence, which trial counsel made no effort to pursue.

With regard to trial counsels' inadequate investigation, there is no dispute that an internal memo to the prosecutor dated 15 days prior to Trottie's trial (the "DA's Internal Memo"), Amended Petition Exhibit 25, states that the defense had yet to review the case file.  Prosecutor Johnny Sutton's *post-hoc* note to file stating that Williams reviewed the case file "several weeks" before trial deepens the mystery.  But even crediting Sutton's note, trial counsel still failed to review the prosecution's file in a timely fashion and investigate the case accordingly.  Indeed, there is no dispute that Williams: sought the appointment of an investigator less than three months before trial; retained the defense psychiatrist mid-trial; and provided the psychiatrist with a synopsis of the case and

4

Trottie's life ten days before the penalty phase.  Amended Petition Exhibits. 19, 20, 21, respectively.

The State attempts to downplay the impact of penalty phase evidence regarding the two extraneous shootings in which Trottie was involved.  *Id.* at 59-61.  There is no dispute, though, that trial counsel failed to present available mitigating testimony and the prosecutor invoked the shootings during argument to the jury.

Similarly, there is no dispute that trial counsel failed to present witnesses to rebut the prosecution's theory that Trottie's black attire at the time of the incident indicated planning and premeditation.  While the State appears to argue that this claim is defaulted, there is no dispute that Trottie's state habeas affidavit stated that he frequently wore black and named two witnesses whose unelicited testimony supports this assertion.

Finally, there is no dispute that there are inconsistencies among witness testimony.  There appears to be no dispute that a failure to utilize such inconsistencies comprises prejudice.

C. There Is No Dispute That The State Court's Decision Applied The Incorrect Legal Standard; *De Novo* Review Is Appropriate.

Notwithstanding the State's arguments regarding exhaustion, a dispositive legal conclusion is undisputed: the findings of fact and conclusions of law adopted by the state habeas court applied the wrong legal standard for evaluating Trottie's claims.  Specifically, the state court incorrectly applied a "preponderance" standard rather than the applicable "reasonable probability" standard.   As a result, under 28 U.S.C. § 2254(d)(1), the state court's findings and conclusions are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   *See Williams v. Taylor*, 529 U.S. 362, 405-06

5

(2000) (stating that a decision applying preponderance standard would be "diametrically different, opposite in character or nature and mutually opposed to" the Court's precedent) (internal quotations omitted).

Further, the State does not dispute that the state court failed to consider Trottie's ineffective assistance claim as to the inadequacy of trial counsels' investigation. Nor does the State dispute that such a failure would result in *de novo* review by this Court.

II.     Analysis: The Undisputed Facts Entitle Trottie To A Judgment As A Matter Of Law.

Each aspect of Trottie's claim of ineffective assistance turns on at least one operative fact or conclusion that is undisputed:

- Planning and premeditation: with regard to both guilt and moral culpability, trial counsel never established the romantic nature of Barbara's relationship with Trottie, or that Trottie wore black as a matter of habit and not deliberateness.

- Sanity/competency evaluations: Williams failed to represent Trottie at the evaluations, and the defense theory was exposed.

- Childhood abuse: the defense was on notice that Trottie was whipped as a child, and counsel failed to elicit evidence of physical abuse as mitigation.

- Extraneous shootings: trial counsel failed to present certain mitigating evidence regarding the shootings, which the prosecutor used to argue for a death sentence.

- Trial counsels' inadequate investigation: according to the Internal Memo, trial counsel Connie Williams had not reviewed the prosecution's case file as late as 15 days prior to trial; in any event, Williams sought appointment of a

defense investigator less than three months before trial and a defense psychiatrist mid-trial.

- Witness inconsistencies: assuming trial counsel inadequately investigated the case, failure to utilize witness inconsistencies amounts to prejudice.

Preliminarily, in analyzing whether trial counsel deprived Trottie of effective assistance, it is proper to consider the evidence Trottie has submitted in these proceedings. As discussed below in section Part Two subsection V., the new uncalled witness affidavits submitted in support of this petition are cognizable because: the state court failed to adjudicate the essence of Trottie's claim on the merits; the new affidavits corroborate factual allegations Trottie advanced in the state habeas proceedings; and, the state court's "opinion" was contrary to, and represented an unreasonable application of, established Federal law. Accordingly, review is *de novo*. *Henderson v. Cockrell*, 333 F.3d 592, 600-01 (5th Cir. 2003).

In light of the evidence Trottie has submitted, trial counsels' failure to present the uncalled witnesses prejudiced the outcome. As discussed in the Amended Petition at 41-46, the nature of the unelicited testimony went to the heart of a proper determination of guilt and reasoned moral decision about the appropriate sentence. Even putting the new evidence aside, Trottie submitted proposed findings of fact and conclusions of law regarding trial counsel's failure to elicit testimony rebutting planning and premeditation. As discussed in the Amended Petition at 41-45 and below in Part Two subsection A.1., this failure alone suffices to establish that trial counsel performed deficiently and prejudice to the outcome of the trial resulted.

Accordingly, relief obtains under *Strickland v. Washington*, 466 U.S. 668 (1984).

7

III.     Conclusion

For the foregoing reasons, summary judgment in Trottie's favor is appropriate.

PART TWO:
OPPOSITION TO THE STATE'S MOTION
FOR SUMMARY JUDGMENT

I.     Relief Is Appropriate Under *Strickland*.
       A.  Trial Counsel Performed Deficiently.
           1.  Failure To Call Witnesses

Defense counsel failed to present evidence at trial that Barbara continued to be involved with Trottie in a romantic manner.  Evidence on this issue is not cumulative, as the State argues, because it would have counterbalanced the prosecution's narrative that Trottie planned and premeditated Barbara's death while threatening her.  Indeed, as the State observes, "any evidence that the crime was not premeditated flies in the face of the trial evidence."  Respondent's Answer And Motion For Summary Judgment ("Resp. MSJ") at 40.  Because such evidence is necessary to a determination of guilt and a reasoned moral decision as to the appropriate sentence, relief is appropriate on this basis alone.

           2.  Sanity/Competency Evaluations

The State's argument regarding Williams' failure to represent Trottie in connection with the sanity/competency evaluations provides all the more reason relief is appropriate.  As the State observes, the information in the statements Trottie made during the evaluations was consistent with the defense at trial.  Resp. MSJ at 32.  Thus, Williams' deficient performance caused prejudice because the prosecutor learned early on that a potential defense turned on Barbara's relationship with Trottie.  It is troubling that the State suppressed *Brady* material on this very issue, as further discussed below.

8

### 3. Mitigation

#### a. Trottie's Background

Any reasonable attorney would have followed up on the lead Trottie provided regarding the abuse he experienced as a child. The State's argument that Trottie limited the scope of the background investigation is irrelevant to assessing counsels' deficient performance. *Rompilla v. Beard* 545 U.S. 374, 382 (2005) (unreasonable limitation of investigation even where petitioner "actively obstructive by sending counsel off on false leads," counsel spoke to family in "'detailed manner'" to unearth mitigation information and *three* mental health witnesses gave opinions at guilt phase).

The evidence establishes that Trottie grew up in an abusive environment and suffered abuse – <u>not</u> that Trottie would "continue to act violently." Resp. MSJ at 52. Such evidence lacks the "double edge" that the Supreme Court has "found to justify limited investigations in other cases." *Wiggins v. Smith*, 539 U.S. 435, 494 (2003) (comparing *Burger v. Kemp*, 483 U.S. 776, 793-94 (1987) (*inter alia*, uncalled witness testimony would have included juvenile criminal activity and established violent tendencies), and *Darden v. Wainwright*, 477 U.S. 168, 186-97 (1986) (unpresented evidence would have opened door against petitioner's interest to prior crimes, damaging psychiatric report, infidelity)).

Even assuming, as the State argues, that the defense psychiatrist's report regarding Trottie's background were admissible, the report only confirms the information set forth in the uncalled witness affidavits. Indeed, the report states that Trottie's parents separated when he was young "after much fighting," see Amended Petition Exhibit 23 at 1, and Trottie witnessed physical abuse between them, *id.* at 2.

b.   The Uncharged Shootings

While the State argues that the prosecution presented "substantial evidence of Trottie's future dangerousness," Resp. MSJ at 52-53, the only incidents of violence were the two extraneous shootings that trial counsel failed to mitigate with available testimony.

With respect to the uncharged shooting that Probation Officer Lynn Clarke testified about, the affidavits of Dwight Ragston and Tonya Baul confirm Trottie's statement to Clark that another individual instigated the conflict.  But more importantly – and what did not come out at trial – is that this individual was Toyna's ex-husband Willie Baul, a violent aggressor who threatened members of Trottie's family and initiated conflict with them over time.  Amended Petition Exhibits 11-12.  Without a complete picture of the shooting, the jury could not have made a reasoned moral decision as to a death sentence.

Regarding the other uncharged shooting, the State's argument turns on the premise that it "could not have been crucial to the State's case on future dangerousness." Resp. MSJ at 60-61.   As discussed above, however, the prosecutor referenced the uncharged shootings during summation.  Further, whether the uncalled witness to this incident suffers from a credibility deficit, as the State argues, is an issue for a jury. *Sullivan v. Fairman*, 819 F.2d 1382, 1387, 1393 (7th Cir. 1987) (affirming District Court's assessment of prejudice resulting from uncalled witnesses if believed).

4.   Trial Counsels' Inadequate Investigation

Just as the state habeas court did, the State ignores the conflict between Trottie's affidavit, which states that Williams only met with him twice, and Williams' affidavit, which alludes to "numerous" meetings.  *See*, respectively, Amended Petition Exhibits 30,

10

at 1, and 35, at 1-2.  Similarly, the evidence regarding Williams's failure to review the prosecution's file in a timely fashion remains in conflict.  In any event, Williams' defective preparation left insufficient time to conduct an adequate investigation based on any findings by the defense investigator or psychiatrist.  The prejudice speaks for itself: trial counsel failed to elicit testimony that would have rebutted the State's planning and premeditation theory and would have established mitigating evidence as to Trottie's childhood and the uncharged shootings.

     5.  Trottie's Clothing

With regard to the evidence that Trottie customarily wore black, the State makes arguments about testimony from one eyewitness that no other eyewitness corroborated and testimony that was never adduced.   Resp. MSJ at 61-62.  The State's arguments are of no moment.  The prosecutor opened and closed on the theme that Trottie's clothing evinced planning and premeditation.  (Trial Transcript ("Tr.") 18:27; 21:31-32.  Any reasonable attorney would have seized on the opportunity to present evidence to the contrary.

    B.  Trial Counsels' Deficient Performance Prejudiced The Outcome.

The State misconstrues Trottie's arguments with respect to prejudice.  As to the conflicting evidence on the face of the trial record, the point is that inconsistencies among the testimony of the prosecution's witnesses and the physical evidence *establish prejudice*.  As Trottie argues in the Amended Petition at 90-97, the inconsistencies highlight opportunities to establish a reasonable doubt as to who fired the first shot. Trottie suffered prejudice because trial counsel forfeited these opportunities due to their inadequate investigation.  Such lost opportunities could not have been more prejudicial

because, as the State observes, "all the crime scene witnesses testified that [Trottie] came into the house and started shooting immediately and that Titus did not fire first."  Resp. MSJ at 64.

In addition, the State mischaracterizes Trottie's argument regarding jurors predisposed toward a sentence of death.  The argument is that the prosecution put trial counsel on notice of its planning and premeditation theory during voir dire, by ensuring a majority of jurors were predisposed to sentence Trottie to death based on such a theory. Prejudice arises because trial counsel failed to act on this notice during the trial.  As discussed above, trial counsel failed to present testimony from uncalled witnesses to rebut planning and premeditation.

In any event, trial counsels' deficient performance prejudiced the outcome for the other reasons discussed in the Amended Petition.  Accordingly, relief is appropriate under *Strickland*.

II.      Exhaustion – Legal Standards

Where the exhaustion requirement applies, a petitioner must give a state court the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights" by "fairly present[ing]" a federal claim to a state court.  *Duncan v. Henry*, 513 U.S. 364, 365 (U.S. 1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (internal quotation marks and citation omitted).  To "fairly present" a claim, the petitioner needs to alert the state court to the "federal nature" of the claim.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). As the Fifth Circuit has stated:

> A claim is 'fairly presented' to the state courts if, for example, the petitioner (1) relies on pertinent federal cases employing relevant constitutional analysis; (2) asserts the claim in terms sufficiently particular as to call to mind a specific right

protected by the Constitution; or (3) alleges a pattern of facts that is well within the mainstream of constitutional litigation.

*Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. Tex. 2004) (internal quotation marks and citations omitted).

"Obviously there are instances in which the ultimate question for disposition will be the same despite variations in the legal theory or factual allegations urged in its support." *Picard v. Connor*, 404 U.S. 270, 277 (U.S. 1971) (internal quotation marks and citation omitted). "The habeas applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. Tex. 1998). A claim is exhausted when a petitioner presents to a state court the factual basis for the claim, with reference to federal law. *See Kittleson v. Dretke*, 426 F.3d 306, 317 (5th Cir. 2005).

III.    Trottie Exhausted His Ineffective Assistance Claim.

Trottie "fairly presented" his ineffective assistance claim to the state habeas court, beginning with his Unopposed Motion For Extension Of Time To File An Application For Writ Of Habeas Corpus ("Ext. Mot."), docketed in the Post Conviction Record at 25-33. Trottie stated: "[T]here was ample evidence available to [Trottie's] trial counsel that [Trottie] and [Barbara] had been seeing each other, had resumed their relationship, talked and met frequently, and that [Barbara] was not concerned with [Trottie's] 'violation' of the restraining order." Ext. Mot. at 2-3. Trottie then correlated this factual background with trial counsels' ineffective assistance regarding who fired the first shot. *Id.* at 3.

Trottie pursued this claim throughout the state habeas proceedings. In his application, he argued that Williams failed to present a defense to negate "the State's theory of 'multiple murder,'" especially as to Titus. State Habeas ("St. Habeas") at 8, 18-

13

20.   Factual support comprised three uncalled witness affidavits establishing evidence that Trottie and Barbara's relationship at the time of the incident affected Trottie's ability to act rationally.   *See* Amended Petition Exhibits 31 (Theotis Holmes affidavit), 32 (Tonya Baul affidavit), and 33 (George Uthe affidavit re Patrice Espree).  With respect to mitigation, the affiants stated they could have testified that Trottie was not a continuing threat to society.  *See* same.

In his proposed findings of fact and conclusions of law, Trottie argued that Williams failed to contact witnesses Trottie suggested.  Trottie's Proposed Findings And Conclusions at 4.  These witnesses would have testified about Trottie's ongoing romantic relationship with Barbara leading up to the incident of her death.  *Id.*; Amended Petition Exhibits 30 (Trottie's affidavit) at 2-5, 36 (affidavit of Trottie's father, Willie Trottie Sr.), and 37 (affidavit of Trottie's sister, Gena Trottie).   Trial counsel also failed to present mitigating evidence.  Trottie's Proposed Findings And Conclusions at 11-14.  Based on this deficient performance, Trottie submitted, there was a reasonable probability that the outcome of his trial would have been different.  *Id.* at 30.

The State argues that any facts or claims in the affidavits of Trottie, his father Willie Sr. and his sister Gena were not "fairly presented" because they were beyond the petition.  Resp. MSJ at 29.  The opinion the State relies on here – *Baldwin v. Reese*, 541 U.S. 27 (2004) – and, indeed, the opinions that frame exhaustion generally – *Duncan v. Henry*, 513 U.S. 364 (1995), *Wilder v. Cockrell*, 274 F.3d 255 (5th Cir. 2001), *Whitehead v. Johnson*, 157 F.3d 384 (5th Cir. 1998) – establish that Trottie exhausted his ineffective assistance claims.  Those cases hold that a petitioner must assert the federal nature of a claim to exhaust it.  Trottie did so.

14

Moreover, the court in *Whitehead* held that a letter attached to the *pro se* petitioner's state writ application containing the "substantial equivalent of the factual basis of his federal application" exhausted his sentence computation claim, and noted that a petitioner "need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement." *Id.* at 387.  Trottie went further, articulating his claim and facts supporting it in his proposed findings and conclusions.  *See* Trottie's Proposed Findings And Conclusions at 4, 14-15.  Even if the State is correct in ignoring that submission, Trottie presented the essence of his claim and its factual bases in his initial application and the attached affidavits.

For these reasons, Trottie "fairly presented" and thus exhausted his ineffective assistance claim.

IV.    Additional Evidence In Support Of Trottie's Ineffective Assistance Claim Is
       Cognizable.
   A. The New Affidavits Properly Reinforce Trottie's Factual Allegations In State
      Court And Establish Trial Counsel's Ineffective Assistance.

New evidence pertains to federal habeas review where, as here, the claim was not adjudicated on the merits in state court.  *See*, e.g., *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01 (2011).  The new uncalled witness affidavits Trottie has submitted in these proceedings appropriately corroborate facts supporting Trottie's state habeas application. *See id.* at 1412 (Breyer, J., concurring in part and dissenting in part); *Morris v. Thaler*, 2011 U.S. App. LEXIS 10111, fn. 1 (5th Cir. 2011).  Further, the new affidavits properly establish trial counsel's ineffective assistance because the state court's "opinion" was contrary to, and represented an unreasonable application of, established Federal law, for the reasons set forth in Trottie's Amended Petition.  *See Panetti v. Quarterman*, 551 U.S.

930, 953 (2007) (unreasonable application of controlling federal law results in federal court "resolv[ing] the claim without the deference AEDPA otherwise requires.").

      B.  A Hearing Is Appropriate.

      Trottie is entitled to a hearing pursuant to 28 U.S.C. § 2254(e) to adduce evidence in further support of his ineffective assistance claim because he diligently sought to develop it in state court. Section 2254(e) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> > (A) the claim relies on--
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

      A petitioner who diligently attempts to develop the facts supporting a claim in state court will *not* be barred by § 2254(e) from developing such facts in federal habeas proceedings. *(Michael) Williams v. Taylor*, 529 U.S. 420 (2000). Diligence is established where the petitioner made "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court…" *Id.* at 435. This standard requires that the petitioner, "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. A petitioner who "has made a reasonable effort to discover claims to commence or continue state proceedings" is excused from procedural default. *Id.* at 433-44.

16

Trottie made repeated requests for a hearing to develop the testimony contained in the uncalled witness affidavits he submitted to the state habeas court. *See* Trottie's Request For The Court To Reconsider Respondent's Motion That Respondent And [Trottie] Submit Proposed Findings Of Fact And Conclusions Of Law ("Findings/Conclusions Reconsideration Mot.") (apparently undecided motion requesting a hearing to resolve conflicts arising between habeas application and Williams' affidavit, *which was not filed with the court or provided to Trottie's state habeas counsel until after court ordered submission of proposed findings and conclusions*); Reply To Respondent's Original Answer (renewing request for hearing to develop testimony from numerous witnesses); Objections to Court Limitations of Proceedings Pertaining to the [Trottie's] Writ of Habeas Corpus ("Objections To Limitations") (arguing, at 2, "[Trottie] has repeatedly indicated through his counsel to the Court that it is the belief of the applicant and counsel that this case cannot be properly developed for Writ of Habeas Corpus matters without an oral hearing allowing live testimony.  An evidentiary hearing with subpoena power is necessary for [Trottie] to have the ability to appropriately develop the facts relevant to the Application for Writ of Habeas Corpus.  The limitations of [Trottie's] ability to develop the factual record by denying an oral hearing with live testimony will prejudice [Trottie] and his ability to properly document the issues contained within the Writ."); and, On Remand, [Trottie's] Motion For The Court To Reconsider Findings Of Fact And Conclusions Of Law, And Ancillary Issues (renewing Objections To Limitations and praying for fact hearing with live testimony).

Further, state habeas counsel diligently tried to communicate with trial counsel Connie Williams over the course of over eleven years, to no avail.  *See* Ext. Mot. at 6

(stating, "To date [April 22, 1997], the trial and appellate counsel [Williams] has not responded to written requests for his file and attempts to reach him by telephone have been unsuccessful as well."); and Findings/Conclusions Reconsideration Mot. (submitted December 18, 2008 and stating, at 1-2, "Apparently Connie Williams, the trial counsel[,] prepared an affidavit in August of 2005 in response to the court's order.  However, Connie Williams never provided a copy of that affidavit to [Trottie's state habeas] counsel or applicant[,] nor was the affidavit filed in the record of the court to be available to counsel upon reviewing the court's file.  On numerous attempts over the past two (2) years, [state habeas] counsel has checked to see whether or not the affidavit was prepared and had been filed.  It had not been filed.  Additionally, [state habeas] counsel for Applicant has made numerous attempts to speak with Connie Williams and has attempted to communicate with him both by telephone calls and through written letters with no response.  Applicant's counsel was unaware that the [Williams] affidavit had ever been prepared.").

Accordingly, a 2254(e) hearing is appropriate.

V.    A Stay Pending The Completion Of Exhaustion As To Trottie's Ineffective Assistance And *Brady* Claims Is Required.
   A. Introduction And Legal Standard

A stay is necessary so that Trottie may exhaust his claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and his argument that trial counsel provided ineffective assistance by failing to review the prosecution's file.  This Court may stay habeas proceedings pending exhaustion of unexhausted claims.  *Rhines v. Weber*, 544 U.S. 269 (2005).  The inquiry is whether "there was good cause for the petitioner's failure to

exhaust his claims first in state court" and the unexhausted claims are not plainly

meritless. *Id.* at 277. Both claims mandate a stay for the following reasons.

B. Previously Unavailable Evidence

As a preliminary matter, it appears the following were unavailable to anyone

outside the Harris County District Attorney's Office until August of 2009:

- the DA's Internal Memo stating that Connie Williams had not reviewed the

  file as late as 15 days before trial (Amended Petition Exhibit 25);

- Prosecutor Johnny Sutton's case notes regarding Probation Officer Lynn

  Clark's statement that Barbara "probably did mess with [Trottie's] head a

  little" (Amended Petition Exhibit 27); and

- Sutton's note to file indicating Connie Williams reviewed the file "several

  weeks" before trial (Amended Petition 29).

*See* Exhibit A hereto, Letter from the Attorney General of Texas to Assistant District

Attorney Macklin Milligan, dated August 18, 2009 (ruling that case notes must be

disclosed pursuant to request from Trottie's federal habeas counsel).

C. *Brady* – Clark's Statement

There is more than good cause for Trottie's failure to exhaust his claim regarding

Clark's statement. Trottie could not have known about Clark's statement before the

DA's Internal Memo surfaced in 2009. Indeed, Clark's testimony was designed to

*conceal* her assessment. For example, in response to questioning by defense counsel at a

hearing outside the jury's presence, Clark testified:

Q:     Are you afraid of [Trottie] today?

A:     It would depend on the circumstances. I can't answer yes or no.

19

Q:      Is there a reason this morning when I asked you that question you told me
        no?

A:      Prior to this incident I had no fear of him at all. *I don't know anything
        about the incident other than what I have been told but it seems to stem
        from an inability to deal with conflict.* I spoke with you about that as well.
        If I was in a conflictual [*sic*] situation with him, this would come to my
        mind. If that is fear, then yes I would be afraid. If that is apprehension --

Q:      You are familiar with the facts and the allegations of this case?

A:      Minimally, what I have been told by the prosecution and yourself.

Q:      Did [the prosecutor] Mr. Sutton discuss the specific facts of how Barbara
        and Titus were killed?

A:      Minimally.

Q:      What do you mean by that?

A:      Are you asking me specifically what he told me?

Q:      That's fine, if you want to answer it that way.

A:      He had told me that there had been conflict. I knew about that. It's
        chronoed [*sic*] in the file. *Prior to the shooting that Willie [Trottie] had
        called and made some threats and there were altercations --*

Tr. at 22:63-65 (emphasis supplied).

Clark further concealed her assessment on direct examination once the jury was
reseated:

Q:      Did you in this case talk to Barbara to give her some counseling or advice
        on what she could do?

20

A:    Ms. Canada called me.  I spoke with her.  I was concerned about it.  I called her back.  I advised her initially to take out a protective order, hung up from her and then I called her back and gave her the number which is a woman's hot-line for shelters.

(Tr. at 22:72).

Q:    Did [Trottie] ever say to you that he was thinking about killing Barbara?

A:    I don't think he ever specifically said that, no.

Q:    Did he ever imply that to you?

A:    I felt it was implied.

Q:    Did you tell him not to kill Barbara?

A:    I told him to stay away from her.

Q:    Did he agree to that?

A:    At one point, yes, he did agree to it.

(Tr. at 22:77-78).

As discussed in Trottie's Amended Petition at 102-03, Clark's suppressed statement went to the heart of the prosecution's case.  Suppression deprived Trottie of the opportunity to undermine the State's planning and premeditation theory and present evidence of his state of mind at the time of the offense.  Due to the materiality of such evidence to a determination of Trottie's guilt or moral culpability, there is a reasonable probability it would have affected the outcome.  Thus, Trottie's *Brady* claim has merit.

D.  Ineffective Assistance – The Internal Memo And Sutton's *Post-Hoc* Note

Trottie's argument that trial counsel failed to timely review the prosecution's file is unexhausted for good cause.  It appears there was no way for anyone but the

21

prosecution to know about this deficient performance until disclosure of the DA's Internal Memo and Sutton's *post-hoc* note in 2009.   Trial counsel impeded Trottie's attempts to investigate.   As discussed above in section IV., trial counsel never responded to state habeas counsel's attempts to communicate between 1997 and 2008.

E.   Neither Argument Is Procedurally Defaulted; A Stay Is Appropriate.

Trottie's *Brady* claim and arguments regarding trial counsel's failure to review the proseuction's file are <u>not</u>  procedurally barred.   Pursuant to Article 11.071 of the Texas Code of Criminal Procedure § 5(a)(1), a successive habeas claim is cognizable when "the factual or legal basis for the claim was unavailable on the date the applicant filed [a] previous application."   As discussed above, the DA's Internal Memo, Sutton's note regarding Clark's statement, and Sutton's *post-hoc* note to file were unavailable to Trottie until the instant proceedings.   Thus, a stay pending exhaustion in accordance with § 5(a)(1) is in order.

VI.     The Prosecutor's Improper Questioning Warrants Relief.

The State sidesteps Trottie's claim that the prosecutor improperly questioned Shirley Baisey and Dr. Priscilla Ray regarding tape-recordings that the trial court had ruled inadmissible.   Moreover, the State concedes that the trial court's instructions to the jury failed to cure the erroneous examinations.   See Resp. MSJ at 87 ("It is understandable that the jury may have been unsure about the matter.").   The decision by the Texas Court of Criminal Appeals is unreasonable because it fails to negate these problems.   Relief is appropriate.

Conclusion

For the foregoing reasons and those set forth in Trottie's previous filings, this Court should:

- Grant summary judgment in Trottie's favor;

- Direct that under Habeas Corpus Rule 7 the record in this case be expanded to include Exhibit A attached hereto;

- Issue a stay holding these proceedings in abeyance, pending exhaustion of Trottie's *Brady* and ineffective assistance claims;

- Deny the State's motion for summary judgment;

- Grant the relief requested in Trottie's Amended Petition, as appropriate; or

- Grant such other relief as law and justice require.

Dated: August 17, 2011
     New York, New York
     & Houston, Texas

Respectfully submitted,
Counsel for Petitioner Willie Tyrone Trottie:


 /s/_____          /s/_____
Zoe Dolan                              David Adler

23

Certificate of Conference

With respect to the request for a stay in this submission, counsel for petitioner Willie Tyrone Trottie conferred with Erich Dryden, counsel for the State, and the State is opposed to the request.

/s/_____
Zoe Dolan
Counsel for Petitioner
Willie Tyrone Trottie

Certificate of Service

I certify that a copy of this submission has been served electronically to Erich Dryden, counsel for the Respondent, today, August 17, 2011

/s/_____
Zoe Dolan
Counsel for Petitioner
Willie Tyrone Trottie

24