IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE TYRONE TROTTIE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-0435 |
| | § | |
| WILLIAM STEPHENS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT

Petitioner Willie Tyrone Trottie is a Texas death row inmate. On September 30, 2011, this Court granted Respondent's motion for summary judgment and dismissed Trottie's Second Amended Petition for a Writ of Habeas Corpus. This case is now before the Court on Trottie's Motion for relief from that judgment [Doc. # 69]. Having carefully considered the motion and all the arguments and authorities submitted by counsel, the Court is of the opinion that Trottie's Motion for Relief From Judgment must be **denied**.

## I. BACKGROUND

The facts are set forth in this Court's September 30, 2011 Memorandum and Order. Trottie and Barbara Canada met and began dating in 1989 or 1990, and soon began living together. In September 1992, Barbara left Trottie and moved in with her

parents.  Trottie threatened to kill Barbara if she did not return to him, and repeated the threat several times over the following months.

In April 1993, Trottie phoned Barbara and told her that he would kill her if she did not return to him by May 1.   On May 3, Trottie called Barbara again and told her that her time was up and he intended to kill her and her brother Titus (because, he claimed, Titus kept Barbara from seeing him).  At approximately 11:00 that night, Trottie forced his way into the Canada residence and began firing a semiautomatic 9mm pistol.  He immediately shot  Barbara's mother, sister, and Titus.  Titus was wounded, but returned fire, hitting Trottie three times.  Though wounded, Trottie cornered Barbara in a bedroom and shot her 11 times, stating:  "Bitch, I told you I was going to kill you."  Barbara died instantly.  Trottie then returned to the living room where Titus was lying wounded.  In the view of at least two small children, Trottie fired two shots into the back of Titus's head, killing him.  Trottie left, and was arrested a short time later in the emergency room of a nearby hospital.  The jury found Trottie guilty of capital murder for murdering Barbara and Titus Canada during the same criminal transaction.

During the penalty phase, the State presented evidence that in 1988, Trottie pled guilty in Louisiana to theft of property valued at less than $100.  In July 1990, he was arrested in Texas for unlawfully carrying a weapon.  He pled guilty to that crime, as well.  In September 1990, Trottie was convicted of theft in Texas and placed on

2

probation. He violated a condition of the probation in February 1993. In October 1992, Trottie shot out the tires on Barbara Canada's car. The Texas Court of Criminal Appeals ("TCCA") also noted that the evidence from the guilt/innocence phase established that Trottie unlawfully carried a handgun, and that the capital murder of Barbara and Titus Canada "was both premeditated and extreme."

Van Curry testified that he worked with Trottie for six years through the Young Professionals of Houston program. Trottie got work as a security guard through the organization and, in exchange, did volunteer work for the organization. Curry testified that Trottie worked with children through the program and they had a good experience. Trottie had a positive attitude and Curry was impressed with Trottie's leadership.

Trottie's mother and sister testified about Trottie's childhood. They testified that Trottie's parents stopped living together when Trottie was five years old. At first, the children lived with their mother. Shortly after the parents separated, Trottie's mother took the four youngest children to a motel where their father lived and told the children to wait for their father on a motel room doorstep. The oldest of the four children was nine years old. Trottie, the second oldest, was eight. After waiting for about 10 minutes, the children went to a grocery store because they were hungry. Store employees caught them stealing food, but then gave the food to them. The police eventually picked the children up and they were placed in foster care. Trottie

3

ran away from his foster homes several times to try to find his mother or grandmother. The defense also established that Trottie had no disciplinary problems in jail.

Lynn Clark, Trottie's probation officer, testified that Trottie brought his nephew to see Clark because Trottie was concerned that the nephew was becoming involved with drugs. Trottie wanted Clark to tell his nephew about the criminal justice system, and help him get help for his drug use.

Dr. Priscilla Ray testified that Trottie needed therapy and medication for depression and issues with abandonment. She also observed that Trottie might have strong reactions to rejection or abandonment by women because of his experiences in childhood. She opined that Trottie's abandonment by his mother may have played a part in his violent reaction to Barbara's rejection. During interviews, Trottie was remorseful. Dr. Ray also testified that she did not feel threatened by Trottie, and opined that he could become a productive member of society with treatment for depression.

Based on this evidence, the jury found that there was a probability that Trottie would commit future acts of criminal violence constituting a continuing threat to society, and that the mitigating evidence was insufficient to warrant a life sentence. Accordingly, the trial court sentenced him to death.

The TCCA affirmed Trottie's conviction and sentence. *Trottie v. State*, No.

71,793 (Tex. Crim. App. Sept. 20, 1995). Trottie filed his state application for a writ of habeas corpus on August 18, 1997. On July 10, 2008, the trial court submitted findings of fact and conclusions of law recommending that relief be denied. The TCCA adopted the findings and conclusions and denied relief on February 11, 2009. *Ex Parte Trottie*, No. 70,302-01 (Tex. Crim. App. Feb. 11, 2009).

Trottie filed his initial federal petition for a writ of habeas corpus on February 13, 2009. He amended the petition on September 14, 2009, and March 4, 2010. Respondent answered the second amended petition and moved for summary judgment on December 20, 2010. Trottie responded and cross-moved for summary judgment on August 17, 2011.

On September 30, 2011, this Court granted Respondent's motion for summary judgment, denied Trottie's cross-motion for summary judgment, and dismissed Trottie's Second Amended Petition. On June 14, 2013, the Fifth Circuit denied Trottie's application for a certificate of appealability. *Trottie v. Stephens*, 720 F.3d 231 (5th Cir. 2013). On March 24, 2014, the Supreme Court denied Trottie's petition for a writ of *certiorari*. *Trottie v. Stephens*, 134 S.Ct. 1540 (2014).

On August 18, 2014, Trottie filed this motion for relief from this Court's judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Trottie is scheduled to be executed on September 10, 2014.

## II.  APPLICABLE LEGAL STANDARDS

Rule 60(b)(6) provides for relief from a judgment for "any . . . reason that justifies relief." This Court can consider the motion if it "attacks, not the substance of the federal court's resolution [of Trottie's habeas corpus petition] on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Relief under Rule 60(b) is available only if the case presents "extraordinary circumstances." *Id.* at 536.

## III.  ANALYSIS

Trottie's motion argues that this Court, in denying his petition, misapplied Texas law, and failed to address the state habeas court's alleged misapplication of law regarding ineffective assistance of counsel.

### A.  Timeliness

Rule 60(b)(6) provides for relief from a judgment for "any . . . reason that justifies relief." Rule 60(c)(1), however, requires that any motion under Rule 60(b) "be made within a reasonable time . . . ." This motion comes almost three years after this Court denied Trottie's petition and more than a year after the Fifth Circuit denied him a certificate of appealability, but only 23 days before Trottie's scheduled execution.

Trottie cites no newly discovered evidence or intervening changes in law in the three years since this Court denied his petition. Therefore, Trottie could have brought

6

this motion three years ago. He has not brought his motion "within a reasonable time," and does not show good cause for the delay. *See*, *e.g.*, *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) ("Motions under Rule 60(b) must be made 'within a reasonable time,' unless good cause can be shown for the delay). Therefore, Trottie's motion is untimely and he is not entitled to relief.

### B. The Substance of the Motion

Timeliness notwithstanding, Trottie's motion expresses his disagreement with this Court's analysis and resolution of his claims. As noted above, the Fifth Circuit denied Trottie's application for a certificate of appealability, thus finding that this Court's resolution of the claims was correct. Trottie's current motion in essence, asks this Court to overrule the Fifth Circuit's denial of his application for a certificate of appealability. This Court lacks the authority to do so.

In any event, Trottie points to no newly discovered evidence or change in controlling law, but simply contends that this Court and, by implication, the Fifth Circuit, got it wrong. Trottie uses this motion, in effect, to seek a second round of appeals from the denial of his petition. A Rule 60 motion, however, "is not to be used as a substitute for appeal . . .." *Diaz v. Stephens*, 731 F.3d 370, 377 (5th Cir. 2013) (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

Moreover, Trottie's motion attacks the substance of this Court's resolution of his claims for relief. As noted above, the Supreme Court has held that a court can

7

entertain a motion under Rule 60(b) only if the motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Trottie identifies no defect in the integrity of his federal habeas proceeding. Rather, he argues that this Court's legal analysis was wrong. That argument goes directly to "the substance of [this] court's resolution [of Trottie's habeas corpus petition] on the merits . . . ." *Id.* Trottie also fails to present any "extraordinary circumstances," *id.*, 545 U.S. at 536, and thus fails to demonstrate that he is entitled to relief under Rule 60(b).

### C. <u>Evidentiary Hearing</u>

Trottie requests an evidentiary hearing. In a federal habeas corpus proceeding, an evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded hearings in federal habeas corpus"); *Robison v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rules Governing Section 2254 Cases R. 8. Moreover, in reviewing a state habeas court's adjudication of a claim on the merits, a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*

*v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

This Court has already adjudicated Trottie's claims based on the record and the submissions of the parties. Because there is no basis for revisiting that judgment, and because this Court would, in any event, be unable to consider evidence not before the state court, there are no grounds for an evidentiary hearing.

### D. Stay of Execution and Certificate of Appealability

Trottie also requests a stay of execution. He is scheduled for execution on September 10, 2014. Because Trottie plainly is not entitled to relief on his Rule 60 motion, and no stay is necessary to allow time to adjudicate that motion, Trottie's request for a stay of execution is denied.

This Court's conclusion that Trottie is not entitled to relief from the judgment is not debatable among jurists of reason. Trottie accordingly is not entitled to a certificate of appealability from this Order. *See Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).

## IV. CONCLUSION AND ORDER

Trottie seeks to relitigate, on the eve of his execution, claims denied by this Court three years ago, and by the Fifth Circuit more than a year ago. His motion is untimely under the facts and circumstances of the case and he fails to demonstrate grounds for relief under Rule 60(b). Accordingly,

It is **ORDERED** that Trottie's Motion For Relief From Judgment [Doc. # 69]

is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue.

SIGNED at Houston, Texas, on this 2nd day of September, 2014.

_____
Nancy F. Atlas
United States District Judge